May it please the Court, my name is Amber Montano, representing petitioner Ms. Zainabu Osman. I'd like to reserve two minutes for rebuttal time, please. Your Honor, this case hinges on the credibility of a young Muslim woman who fled persecution in her homeland of Somalia. Ms. Osman was traumatized multiple times in her short 17 years before she arrived in New York City six days before the World Trade Center was attacked on 9-11-2001. She feared then, and she still does fear, being subjected to the most severe form of female genital mutilation, as it is practiced on 98% of Somali women. She also claims past persecution due to death threats that caused her family to seek refuge in Kenya when she was only seven years old. The immigration judge decided that Ms. Osman was not credible, however, she reached this determination with little to no reasoning or any specific analysis, inserting much of her own impermissible speculation and conjecture. The judge ignored virtually all of the relevant information in the record supporting Ms. Osman's credibility and claims. Presumably because of this unfounded adverse credibility finding, the judge precluded Ms. Osman's statutory eligibility for asylum as to the one-year time bar. In a bravado decision, the Board adopted and affirmed the judge's decision with no additional reasoning or correction of any of the legal errors below. Neither of these decisions rest on substantial evidence as to Ms. Osman's credibility. Well, we don't have jurisdiction to ask that question with respect to the asylum claim, do we? Your Honor, that has definitely become an issue. As to whether that is the case or not, regarding either question of law or constitutional claims. Well, I understand. But what I just thought I heard you say was there wasn't substantial evidence. Yes. However, there is an additional component to this, which is that the judge incorrectly applied the law to the facts in this case as well, which this Court does have jurisdiction to review de novo. Well, that's just another way of saying there's no substantial evidence, if that's your argument. Your Honor, the time bar was mentioned by the judge only essentially in passing at the end of the decision. There was no information that she relied on to state that. And the time bar is actually has a two-part analysis to it. The first part is whether or not the applicant did file within the first year of her arriving here. She affirmatively applied for asylum. The second part is whether there are any changed or extraordinary circumstances that would excuse that one year. The reason that the judge apparently did not believe Ms. Osmond on this point is related to the date that she entered the United States. Look, let me ask the question in a very different way. If you were correct that the basic credibility determinations don't hold up on the withholding and cap claim prong of your application, there's a precedent in this court on a remand suggesting that the issue of asylum be not held up on a remand and be reconsidered in light of the reversal, as it were, of the credibility determination on a withholding claim. Would that solve your immediate problem and get around any jurisdictional issues? If I understand, Your Honor, correctly, you're saying that there is currently a case that is pending before this Court with regard to that. It's not Ramadan. It's another case. No, that's not at all what I said. I'm sorry. There is a jurisdictional issue about the asylum claim. I mean, regardless of how it ultimately resolves itself, there is one. There is no jurisdictional issue on the withholding and cap claim. Yes, that's correct. If you were correct that the credibility determination doesn't stand up on the withholding claims, we have got precedent which says in those circumstances on remand, the I.J. can reconsider the asylum claim in light of the reversal of the adverse credibility determination on the withholding claim. Yes, I understand that. The Sherry v. Gonzalez case is a significant problem. Okay. Would that solve your problem? It would solve our problem as to protection under withholding or under a cap. That's certainly the case. Would it solve your problem for the asylum if it were remanded with the determination that the credibility determinations were not correct and the I.J. were to take that, review the asylum determination again with that in mind? Hopefully, that's the case, Your Honor. I know that in the Sherry case, that did solve the problem because the judge did end up, when it was ultimately remanded to the emergency judge. I mean, that's what Judge Reimer is suggesting, is that rather than confront the rather complicated jurisdictional question, we could avoid that and remand and let the I.J. sort out the asylum claim. And if you're not right on the credibility determination with respect to the withholding and cap claims, then you lose on the asylum claim anyway. Yes. Yes, that is true. What the question then is, can we not avoid the jurisdictional question in this case by simply resolving the credibility determination issue in the withholding case? Yes, you can, assuming that, of course, the immigration judge would be reviewing the asylum. No, we can't force that. And we can suggest it under this theory. That's part of the question. And because we believe that Petitioner is, in fact, deserving of asylum, that and there are clearly different protections under asylum than there are under withholding and cap. Of course, that's never been resolved anyway, right? On the merits of the asylum. The merits of the asylum claim have never been resolved. No, in this case, they have not. So it has to go back anyhow. So it has to go back anyhow. We can't grant asylum on this record. Right. I am well aware of that. However, you So the best we could do, even if we had jurisdiction, would be to return it. Yes, that would be the conclusion of that. And then once at that point, the judge could reconsider the one-year bar also. And, you know, you could come back again. There is something else that this panel may choose to do, which is resolve the question of whether she is eligible for withholding itself on the basis of her female genital mutilation claim. And that is because there is ample evidence in the record stating both on an objective basis that she has an objective fear that because it is nearly universal that Somali women are subjected to the most severe form of female genital mutilation, which was established in the Mohammed versus Gonzalez case that I said to the court under the World 28-J last week, that she also has a subjective fear based on her testimony regarding the harassment that she endured by her aunts, and that she would certainly face that. The 98 percent alone is well above the withholding standard or the 10 percent standard for asylum. As far as other issues regarding credibility, many of the points that the judge makes can fall into several categories. One, her identity. Secondly, the rape and the reporting of that to the therapist, as well as the attacks and what was the death threats, whether they were made on the first or the As well as the travels that she had from Kenya to the United States and within the United States, from New York to Oakland. On each of those individual points, there is evidence in the record that would certainly compel a reasonable fact-finder to find other than what the judge did. On the identity issue itself, the judge notes in her decision that it is almost impossible to get any personal records from Somalia. That would include birth certificates, that would include passports, and there is plenty of testimony that the Ms. Osman discussed as to admitting that she was born in Somalia, what her tribal affiliation was, physical features, et cetera. The notice to appear stated that she was a native and citizen of Somalia, which the judge also wrote in her decision. There is nothing to contradict where she was actually from.  The only question that the judge had was whether or not the therapist thought  Kagan. Well, I suppose that if the judge doesn't believe an applicant, that would include not believing anything that the applicant said, right? Not necessarily, Your Honor. Well, I mean, the real point that you've got is that the at least two credibility determinations that go to the heart of the claim are not supported. I mean, doesn't that just end it? Well, certainly, if that's the panel's view, it does not support it. And the issue related to the rape and related to the rape does not go to the heart of her asylum claim. I understand that I'm out of time, so I will reserve what little I have left for rebuttal, please. Thank you, Your Honor. Good morning, Your Honors. Lindsay Chichester on behalf of the Attorney General. May it please the Court. I'd like to go first to the point that the Court issued the order on Tuesday regarding the effects of the REAL ID Act on this particular case. The government would agree that the REAL ID Act has little, if any, effect right now on this particular case because the Court doesn't need to invoke INA 242a2d in order to resolve the issues regarding the credibility finding. This Court has – there's absolutely no restriction on this Court's ability to review the adverse credibility finding in light of the withholding claim. Therefore, there's no need to even visit the jurisdictional issue with respect to the one-year bar. Furthermore, just in reference to the REAL ID Act and changes that have been made, the adverse credibility sections that were added to the REAL ID Act would not have any impact on this application because this application was filed before May 11, 2005. And it doesn't seem to have been raised specifically in this case that the Petitioner's unavailability of corroborating evidence is at issue. Therefore, the changes made in 242b4 by the REAL ID Act would also not seem to be at issue in this case. This case rests entirely on the immigration judge's adverse credibility finding in the Petitioner presented – excuse me, the testimony presented by the Petitioner in this case. The immigration judge found that she was not credible and based her findings first and foremost on her – the Petitioner's statements in the record regarding the first attack and the second attack when her family lived in Somalia. Now, the Petitioner – Explain that to me. There were two attacks on her father. That's what she claims, yes. And she was 7 years old at the time. Yes, Your Honor. And she testified that she didn't really understand or – completely what was being said at the time, the attacks. She was told by her mother. Yes, Your Honor. And it seemed to me there was no dispute that the people who attacked her father at one point threatened the family and said they should leave. But the immigration judge said that she had said that happened the first time, where really it happened the second time? If I can clarify, Your Honor, what the immigration judge found is when Petitioner came up and testified before the immigration judge on direct testimony, she indicated that there were threats on their family and that these threats were made both in the first attack and the second attack. And the immigration judge questioned that it really happened in the first attack. The immigration – She didn't question that it happened in the second attack. The immigration judge at that point was still fact-finding, Your Honor, in determining whether or not this Petitioner as a whole was credible. And so she waited until cross-examination, and the Petitioner again stated that these attacks happened in the first. I'm talking about her decision. She didn't question that it happened in the second attack. The only question is that it happened at the first attack. It would appear from the decision, Your Honor, that the immigration judge questioned whether she was ever in Somalia or whether she was even being persecuted in Somalia. The immigration judge found, based upon the identified bases, that she didn't find her credible. So she didn't believe her on one instance. She certainly didn't believe her. What is it that she didn't believe? She didn't believe that she was threatened the second time, the first time. The immigration judge didn't believe that she was threatened the either time because she didn't find her testimony to be credible. Well, where does it say that? Well – No, no. I'm talking about what led her to believe that her testimony was not credible. Yes, Your Honor. What led her to believe it, that it was not credible, was that she testified that the threat was made on both occasions, where, in fact, it was only made the second time. Yes. In her testimony, what the Petitioner did was, on directing cross, she initially stated that the threats were made in both accounts. And then when she was questioned on cross-examination on that issue, she stated, no, no, it only happened on the first account. And the immigration judge gave her the opportunity kind of to rectify that, and she didn't provide an explanation that the immigration judge found sufficient. She stated she didn't understand the question. Well, she didn't understand the question. She understood it properly the first two times it was posed to her. And then on the third time, she recanted her testimony on that issue. And then the immigration judge, even at that point, gave her an opportunity to say, do you need an interpreter? Are you having difficulty or are you not understanding? And she said, no. And that was the inconsistency or the inconsistency that the immigration judge based that particular portion of the record, her finding. Then there were the inconsistency or at least the confusing testimony regarding her claim of rape that she claimed was based upon her aunt's desire to have FGM performed on her. Now, the immigration judge was not the first person in this hearing to bring up the issue of whether she sought medical care. That issue was raised by Petitioner's own counsel on direct examination. And Petitioner's explanation for that was we didn't have any money. She didn't any of the named bases that came later were not her reasoning for not seeking medical testimony. She specifically stated it's because we didn't have any money. And then the immigration judge later questioned her, saying, well, how did you have money if you're living in abject poverty for three years following this rape? Where did your family be able to amass those kind of assets to smuggle you out of the country? It wasn't so much a – it was not a subjective finding as to where the money should be spent. It was a question of whether the money was there at all. And that led the immigration judge to find that the fact that she would claim that they were living in abject poverty without running water, with nothing, and then all of a sudden be able to sell enough of their items and have jewels and all of these things that would allow her to pay. It was $200, right? $200 in cash, plus the cost of getting her – paying the smuggler, which they don't identify how much that costs. But in most of the cases that we've seen, it can average upwards in the thousands of dollars to pay a smuggler to get someone to the United States. And then the immigration judge went on after, you know, finding that to be questionable. She went on to her testimony when she arrived in the United States. And the petitioner testified implausibly that it takes one night to drive from New York City to Oakland on a bus. And that was not a situation where she was 7 years old and wouldn't have had any recollection of it or didn't understand the language. She herself claims to have been on that bus. She wasn't able to provide – Now, what's the point of lying about how long it takes to get on a bus from – Well, from the immigration judge's point of view, it's a point of establishing when she really entered the United States and the point of entry, because according to the notice to appear, she entered at an unknown date on an unknown point of entry. When she was pleading to the immigration judge regarding those charges, she – she entered, she just can't prove it. And then the testimony that she presented in no way proved her date of entry, which led the immigration judge in part on the adverse credibility finding. And then again, with the one-year bar issue, if she can't establish credibly when she entered, how she entered, and give some kind of basis, the immigration judge is left not knowing what to believe. And if the immigration judge is left not knowing what to believe, she can find that particular individual to be not credible. Beyond that, the immigration judge also questioned her identity. And in that issue, the immigration judge didn't base that exclusively on saying identity documents aren't available. It was the vagueness, the inconsistencies, and the overall testimony saying, I can't establish who this person is. If she can't establish who she is, she's not eligible for asylum. The immigration judge, at that point – How do you ever prove that from Somalia? Well, in certain Somali cases, I'm sure you can get documents, affidavits from family members. I mean, this particular case, when they – the immigration judge even asked her, well, when you went to Kenya, do you have any recollation of a ration card or where you were? And she couldn't describe that. When she said she lived in the city of Eastley outside Nairobi for over six years, the immigration judge asked her, and I believe DHS counsel also asked, well, can you describe anything about this place you've lived for over six years? She couldn't identify it was near a body of water. She couldn't identify anything, not one geographic fact about that city, which led the immigration judge to conclude that perhaps she did not live in that city. And when left with not knowing what to believe, the immigration judge can find that person not credible. Therefore, we would also assert, Your Honors, that the Petitioner in this case has failed to raise her claim for protection against torture, either to the board or in her brief. So that issue regarding review by this Court has been effectively waived. And we would also argue that the immigration judge's adverse credibility finding is supported by substantial evidence in the record, and the record evidence does not compel the test – the fact that the Petitioner testified credibly. And therefore, if the Court has no further questions, we would argue that the petition for review should be denied in this case. Thank you, counsel. And I will give you one minute. I would like to urge the Court to view the minor discrepancies that were raised by the government regarding the I.J.'s decision as, in fact, what they are. They are minor discrepancies, none of which go to the heart of the matter. In this particular case, the attacks, the judge never even examined whether or not they happened. And the matter of what was said on the actual – whether the threat was on the first or second time, the family did leave Somalia hours after the second attack because they took the threat so seriously. And she was 7 years old, and she did not understand the language that they were speaking. It was translated through her mother. As to the rape and whether she received medical care or not, it was an issue of whether the mother chose to spend whatever little resources she had left waiting for an opportunity to protect her daughter, and she decided at that point that she could no longer protect her from female genital mutilation, to send her all the way to the United States, half a world away. Regarding the bus trip across the United States, which, again, has nothing to do with her actual claims, there is no point of her lying about that. May I complete my thought on this? Yes. The reason that she so clearly remembers her date of entry was because she was in the United States less than one week when the terrorist attacks occurred in New York City. If she had come in one day earlier, September 4th, she would have been eligible for temporary protected status or any other day prior to that time and point in time. She had absolutely no incentives to say that she came in on September 5th to restrict any other form of legal status that she could have obtained in the United States if she had been able to say that she came in one day earlier instead. Thank you, counsel. Thank you. The case is served. It will be submitted.
judges: Reinhardt, Rymer, Thomas